UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Deborah Smith,

       Plaintiff,

v.

Hilton Hotels Corporation d/b/a
HHC-Hilton Minneapolis H&T,

       Defendant.

Court File No. 08-6195 (MJD/JSM)

**PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Plaintiff Deborah Smith was a well-liked and effective manager with Defendant Hilton

since early 2006. On the evening of August 30, 2007, Plaintiff entered the Boardroom at

Defendant Hilton that was the location for a party marking the end of a management conference.

She observed several members of management engaging in actions that were sexual in nature,

acts she believed constituted an orgy. She also observed that many of management were

intoxicated. She left the room only to be confronted by Food and Beverage Manager Victor

Salamone, who berated her for coming in to the room. Subsequent to this party, Manager Jim

Vennewitz informed a co-worker of Plaintiff Smith's that he was going to get Smith fired. In

fact, during the meeting in which she reported the inappropriate sexual acts she witnessed,

Plaintiff Smith was suspended for acts that occurred months earlier and for fraternizing with the

1

SCANNED

DEC 2 3 2009

U.S. DISTRICT COURT MPLS

staff outside of work, an act that does not violate any known policy of Defendant Hilton. Defendant Hilton then took advantage of a mistake on Plaintiff's FMLA paperwork and terminated her while she was on medical leave. Because of these unlawful acts, Plaintiff Smith has pursued these claims of sexual harassment and retaliation under the MHRA.

## STATEMENT OF FACTS

Plaintiff Deb Smith commenced her employment with Defendant Hilton as the SkyWater Restaurant/Lounge evening manager in March or April of 2006. (Smith Depo. at 77-80). James Vennewitz was her immediate supervisor, and he reported to Victor Salamone, the Food and Beverage Director. (Id. at 98-99).

Manager Kim Thompson testified that, overall, Smith was effective as a manager and people liked her. (Thompson Depo. at 82:11-15). Manager Vennewitz testified that Deb Smith was always a "very good employee" on the floor. (Vennewitz Depo. at 16-17).

### A.  August 30, 2007 Party

### 1.  Plaintiff Smith's Observations

On the evening of August 30, 2007, Defendant Hilton had a party at the end of a conference for its directors of sales. (Smith Depo. at 127). Plaintiff Smith was managing the bar, which was very slow as far as clientele. (Id. at 132). Sometimes the bar area closes early if there is not enough business and other times, they stay open later. On the evening of the 30th, Plaintiff attempted to contact various managers, including David Bullerman and Kim Thompson, to see if they were planning to come in for drinks. (Id. at 134). She anticipated cutting some of the staff for the night if it was not going to be busy. (Id.). She decided to make cuts about 12:35 a.m. because no one was in the bar. (Id. at 136). However, she wanted to double check and since no one responded to her phone calls, she went to the banquet level to see if they were

2

planning on coming to the bar. (Id. 136-137). A security guard told her the managers were in the boardroom. (Id. at 140).

When Smith opened the door to the banquet room, she first saw Manager Bullerman and a banquet employee named Patti. (Smith Depo. at 141). Patti was running her hands over Bullerman's thighs and genitals, and he was moaning "ooh." (Id. at 141, 170). She also saw a woman lying on a table with Manager Dale Nelson on top of her. (Id. at 143). The woman had her legs spread apart and her knees bent at the end of the table, and Nelson was in between her knees, leaning over her. (Id. at 144-145). The top of Nelson's body was lying on top of the woman. (Id. at 146). She could not tell if his pants were unzipped, but he was making sexual movements against her, grinding his hips into her groin. (Id. at 146-147). It appeared to Plaintiff that they were having sex, but with clothing on. (Id.). She heard them moaning, as well. (Id.). She quickly asked her question about whether or not to keep the bar open. (Id. at 148). Manager Vennewitz's voice came through the room telling her to leave it open. (Id.). The room itself was covered with wine bottles, alcohol bottles and beer bottles. (Id. at 150). There was a lot of laughing when Smith opened the door. (Id.). When she opened it, a lot of "oooohhs" went through the room, as if people realized they were "busted." (Id.). Plaintiff was horrified by what she witnessed in the Boardroom. (Smith Depo. at 148).

2. **Others corroborated the sexual misconduct occurring at this party.**

Others corroborated Plaintiff's recitation of events. Cocktail server April Bezdichek was called to the party by Manager Vennewitz around 1:00 in the morning. When she arrived, Bezdichek observed Manager Dale Nelson on top of a female band member, who was trying to push him away. (Bezdichek Depo. at 182). She was obviously trying to resist Nelson's advances. (Id. at 189-191). The female band member was lying flat on the table, face up and Nelson was on

3

top of her, engaged in acts simulating sex. (Id.). She also observed a female employee sitting on Manager Bullerman's lap and rubbing his legs by his penis. (Id. at 239:1-6). Additionally, Bezdicheck was subjected to a sexual assault at the party. Shortly after her arrival, Manager Vennewitz pulled Bezdichek down onto his lap and began pumping her up and down on his erect penis. (Bezdichek Depo. at 183:20 – 184:1). Manager Vennewitz admits that Bezdichek was on his lap after she arrived. (Vennewitz Depo. at 45). She tried several times to get away, but he continued pulling her back down on his lap and on his penis. (Bezdichek Depo. at 185:24 – 186:6). Bezdichek was also subjected to Manager Vennewitz begging her to come to his room with him. (Id. at 186:23-187:15).

John Youngdahl, an employee interviewed and who was present at the party, told Human Resources about inappropriate conduct, including a sexual comment about another employee's "crotch." (See Exhibit 4). Even Manager Salamone told HR there was "way too much inuendo's"(sic) between Manager Dale Nelson and employee Sarah Haviland. (Exhibit 5). Manager Heather Huggins corroborated some of what Plaintiff Smith observed that night. She stated she observed Manager Nelson touching a female band member. (Exhibit 6). He had his arms wrapped around the woman and she was pulling away from him. (Id.) It was an "awkward situation." (Id.). Tracie Schultz' notes reflect that Sarah Haviland was pouring shots into manager's mouths, straddling the person she was pouring the shots into, and that she flashed John Youngdahl (showed him that "the carpet matched the drapes"). (Exhibit 7).

## B. Retaliation against Smith

After Smith went back to the bar and decided to leave it open, Manager Salamone came down and asked her to come with him. (Smith Depo. at 160). He was inebriated and informed

4

Smith she had embarrassed him in front of everyone. (Id. at 161-164). She let him say what he wanted and did not dare contradict him because of his condition. (Id.).

After the party, a co-worker informed Plaintiff Smith that Manager Vennewitz was going to have her fired. (Smith Depo. at 168). April Bezdichek also heard this comment directly from Vennewitz. (Bezdicheck Depo. at 168).

In fact, after this party, Plaintiff Smith was suspended and ultimately fired. She reported her observations about the sexual misconduct to Human Resources on September 11, 2007. During this meeting, Smith was suspended for practices all managers engage in, including fraternizing. (Smith Depo. at 175-176). Manager Thompson testified that she socialized with employees of Hilton outside of work. (Thompson Depo. at 19-20). She also testified that there was no policy against socializing outside of work with a group of employees. (Id. at 21:1-4). Manager Vennewitz also testified there was no policy against fraternizing with co-workers outside of work. (Vennewitz Depo. at 46). In spite of this lack of policy and that other managers routinely socialized with employees outside of work, Defendant Hilton took a different approach with Plaintiff Smith and did not want her fraternizing. (Smith Depo. at 118). She was also suspended for talking about her personal life, yet another practice engaged in by other managers. (Id. at 175-176). She was suspended for taking tables in the restaurant, something that had occurred months before. (Id. at 176-177). Manager Heather Huggins told her to look for another job. (Id. at 178). Another manager also told her to shut up and look for a new job, knowing Smith had gone to HR and reported what she observed in the boardroom. (Id. at 178-179). In fact, the suspension occurred right after she reported her observations in the boardroom. (Id. at 179).

Then-Human Resources Director Tracie Schultz testified that *they had no plans to suspend Plaintiff Smith* until after the meeting in which she reported the sexual misconduct. (Schultz Depo. at 38). Manager Thompson testified that overall Smith was effective as a manager and people liked her. (Thompson Depo. at 82:11-15). Manager Vennewitz testified that Deb Smith was always a "very good employee" on the floor. (Vennewitz Depo. at 16-17). He admitted that he and Victor Salamone decided to suspend Smith at the very end of August of 2007. (Id. at 22). In fact, he admitted it was possibly right after the party that was the subject of her complaints. (Id.). He testified he did not believe he had written her up before the boardroom party on August 30. (Id. at 38). Manager Vennewitz was admittedly upset with Smith for coming into the boardroom that night. (Id.) The write-up was based on her fraternizing with staff, something both Managers Thompson and Vennewitz testified there was no policy against. (See Exhibits 1 and 2). Further, the Discussion Planner stated that Smith's "demeanor and negative attitude must improve," directly referring to her leaving the Boardroom on the evening of August 30th where she observed what she believed was an orgy. (See Exhibit 2).

Shortly after the write up, Plaintiff Smith went on medical leave. (Vennewitz Depo. at 23). Her FMLA paperwork stated she would return on December 16. (Smith Depo. at 220-221). However, she did not return by that date because of confusion with the paperwork. She had ankle surgery and was not having the stitches removed until the 18th of December. She was not able to use her foot and was on a walker until the 18th. (Id. at 226). She never saw the first note to Defendant Hilton, so she did not know it was incorrect. (Id. at 228). Instead of clearing up the confusion, Hilton used this paperwork issue to terminate Smith. Defendant Hilton never bothered to give Smith an opportunity to correct the situation, demonstrating that the reason

6

given for the termination was pretext, and the termination was directly related to her complaints about the orgy.

## SUMMARY JUDGMENT STANDARD

A court may only grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03.

Summary judgment is only appropriate when the evidence, *viewed in the light most favorable to the non-moving party*, shows that there is no genuine issue of material fact. Goins v. West Group, 635 N.W.2d 717 (Minn. 2001)(citations omitted)(emphasis added). Pursuant to Rule 56.03 of the Minnesota Rules of Civil Procedure, the moving party carries the ultimate burden of proof on summary judgment. The Appellate Courts have held:

> Summary rulings are the direct antithesis of the full and fair process found in an adversary proceeding. See, e.g. Hartford Accident and Indem. Co. v. Stauffer Chem. Co., 741 F.2d 1142, 1144 (8th Cir. 1984). Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion. Hillebrand v. M-Tron Industries, Inc., 827 F.2d 363 (8th Cir. 1987).

In a motion for summary judgment, the nonmoving party has the benefit of that view of the evidence which is most favorable to him (sic) and is entitled to have all doubts and factual inferences resolved against the moving party. Progressive Cas. Ins. Co. v. Kraayenbrink, 370 N.W.2d 455, 459 (Minn. App. 1985), *pet. for rev. denied* (Minn. Sept. 19, 1985). If any doubt exists as to the existence of a genuine issue of material fact, *the doubt must be resolved in favor of finding that the fact issue exists.* Rathbon v. W.T. Grant Co., 300 Minn. 223, 230, 219 N.W. 2d 641, 646 (1974)(emphasis added).

The role of a court on a Summary Judgment Motion is not to weigh the evidence, but

instead to determine whether, as a matter of law, a genuine factual conflict exists. <u>Agristor</u>

<u>Leasing v. Farrow</u>, 826 F.2d 732, 734, (8th Cir. 1987). The Minnesota Supreme Court has stated

that:

> even if the state of the record leads one to suspect it to be unlikely that one party or
> another will prevail, that fact is not sufficient basis to refuse a party a day in court
> concerning issues not shown to be a sham, frivolous, or so insubstantial that trying them
> would be an exercise in futility.

<u>Larson v. Ind. Sch. Dist. No. 314</u>, 252 N.W.2d 128 (Minn. 1977).

The Court in <u>Larson</u> went on to state that: "Because it is not absolutely clear that there are

no disputed questions of material fact involved in plaintiff's claims against defendants, the

summary judgment motion in question must fail." <u>Larson</u>, 252 N.W.2d at 130.  Plaintiff Smith

has established in the record specific facts creating genuine disputes over material facts which

must be determined at trial.  See, <u>Hunt v. IBM Mid-America Employees' Federal Credit Union</u>,

384 N.W.2d 853, 855 (Minn. 1986).  In this matter, there are numerous disputed questions of

material fact in Smith's legal claims.  Based on the disputed facts, summary judgment should be

denied on all counts.  "[S]ummary judgment is inappropriate if the nonmoving party has the

burden of proof on an issue and presents *sufficient evidence* to permit reasonable persons to draw

different conclusions." <u>Schroeder v. St. Louis County</u>, 708 N.W.2d 497, 507 (Minn.2006).

## LEGAL ARGUMENT

### A. <u>PLAINTIFF SMITH HAS MET HER BURDEN OF ESTABLISHING A HOSTILE WORK ENVIRONMENT.</u>

Sexual harassment is expressly recognized as a form of discrimination under the

Minnesota Human Rights Act (MHRA). *See* Minn.Stat. § 363A.03, subd. 13 (2006) ("sexual

harassment" within the definition of "discriminate"). The MHRA defines sexual harassment to

include:

> unwelcome sexual advances, requests for sexual favors, sexually motivated
> physical contact or other verbal or physical conduct or communication of a
> sexual nature when:
>
> (1) submission to that conduct or communication is made a term or condition,
> either explicitly or implicitly, of obtaining employment ...;
>
> (2) submission to or rejection of that conduct or communication by an individual
> is used as a factor in decisions affecting that individual's employment ...; or
>
> (3) that conduct or communication has the purpose or effect of substantially
> interfering with an individual's employment ... or creating an intimidating,
> hostile, or offensive employment ... environment.

*Id.*, subd. 43 (2006).  The conduct described in clauses (1) and (2) has been characterized as

"quid pro quo" harassment, while that described in clause (3) is often referenced as "hostile work

environment." Benassi v. Back & Neck Pain Clinic, Inc., 629 N.W.2d 475, 480

(Minn.App.2001), *review denied* (Minn. Sept. 11, 2001).  Minnesota courts use the McDonnell

Douglas framework for analyzing MHRA claims at the summary-judgment stage of proceedings.

*Id.; see* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). The prima facie burden varies depending on the category of sexual harassment alleged.

Benassi, 629 N.W.2d at 480.

For claims of quid-pro-quo harassment, a plaintiff must show that:

> (1) she is a member of a protected class; (2) she was subjected to unwelcome
> sexual harassment in the form of sexual advances or requests for sexual favors;
> (3) the harassment was based on sex; and (4) her submission to the unwelcome
> advances was an express or implied condition for receiving job benefits or her
> refusal to submit resulted in a tangible job detriment.

Id. at 480-81.

For claims of hostile work environment, a plaintiff must show that "(1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on [sex]; (4) the harassment affected a term, condition or privilege of her employment." Frieler v. Carlson Marketing Group, Inc., 751 N.W.2d 558, 565 (Minn. 2008). "In order to demonstrate that the harassment affected a term, condition, or privilege of employment, a plaintiff will have to show the harassment was so severe or pervasive as to alter the conditions of the [plaintiff's] employment and create an abusive working environment" Id. (quotation omitted).

Prior to Frieler, Minnesota courts required a fifth element of proof in hostile-work-environment cases: that "the employer knew of or should have known of the harassment and failed to take timely and appropriate remedial action." Benassi, 629 N.W.2d at 481; see also Cummings v. Koehnen, 568 N.W.2d 418, 424 (Minn.1997). In Frieler, the Minnesota Supreme Court held that, following a 2001 legislative amendment to the MHRA, this fifth element is no longer required. Frieler, 751 N.W.2d at 570. Rather, "an employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over a victimized employee." Id.

The court further held that, in cases not involving a tangible employment action, the employer may raise an affirmative defense to liability or damages if it proves by a preponderance of the evidence: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Frieler, 751 N.W.2d at 570-571. (quoting Burlington Indus., Inc. v. Ellerth, 524

U.S. 742, 765, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); Faragher v. City of Boca Raton,

524 U.S. 775, 807, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998)).

Minnesota courts look to the principles and interpretations of federal Title VII cases

when construing the MHRA.  See Costilla v. State, 571 N.W.2d 587, 591 (Minn. App. 1997).

The MHRA should be liberally construed for the accomplishment of its purposes, one of which

includes protecting Minnesota employees from sexual harassment.  Cummings v. Koehnen, 568

N.W.2d 418, 422 (Minn. 1997).

1.      **Plaintiff Smith was the subject of unwelcome sexual conduct.**

Contrary to Defendant's assertions, Plaintiff Smith was subjected to grossly inappropriate

and unwelcome sexual conduct.  Her job required her to seek the input of upper management.

She could not close down the bar without the permission of her managers.  When they refused to

respond to calls to their cell phones, Plaintiff Smith was forced to go to the Boardroom as part of

her job.  She observed sexual acts that an employee should never be forced to witness in that

context.  A single incident of sexual harassment can suffice to create liability when it is severe,

as it was in this case.  A single incident can be sufficient to find a hostile work environment.

Moring v. Ark. Dep't of Corr., 243 F.3d 452, 456 (8th Cir.2001) (finding single incident in motel

room that involved touching thigh and attempting kiss sufficient to create sexual harassment

question for jury); Rorie v. United Parcel Serv., Inc., 151 F.3d 757, 762 (8th Cir.1998) (holding

that supervisor's patting female employee on back, brushing up against her, and telling her she

smelled nice could constitute sexual harassment); Howard v. Burns Bros., Inc., 149 F.3d 835,

840 (8th Cir.1998) (holding that evidence of sexual innuendos and unwanted physical touching

raised jury question of whether work environment was hostile); Burns v. McGregor Electronic

Indus., Inc., 989 F.2d 959, 964 (8th Cir.1993) (noting that sexual harassment need not consist of

11

only explicit sexual advances, but can occur through sexual propositions, offensive touching, and sexual innuendo).

## 2. The events that occurred in the Boardroom impacted a term, condition, or privilege of employment.

Plaintiff Smith followed what she believed was Hilton policy and reported the sexual misconduct to Human Resources. During the very meeting that she reported her observations of sexual misconduct, she was suspended. Manager Vennewitz told a co-worker he planned to get Smith fired after she walked in on the events that occurred in the Boardroom. (Bezdichek Depo. at 168). After the suspension, Defendant took advantage of a mistake in Smith's FMLA paperwork to terminate her during a medical leave. Clearly, the sexual harassment impacted a term and condition of Smith's employment. A plaintiff may demonstrate through his or her conduct that harassment is unwelcome. Beard v. Flying J, Inc., 266 F.3d 792, 798 (8th Cir.2001). Smith's actions of reporting the sexual misconduct to Human Resources is evidence that the harassment impacted a term and condition of her employment.

## 3. Hilton did not take prompt and appropriate remedial measures to correct the harassment.

While Defendant has self-servingly papered the file with write-ups relating to the party of August 30 (conveniently relating only to abuse of alcohol), these write-ups failed to address the sexual misconduct that was the reason for the initial complaints. Third parties verified the sexual misconduct. April Bezdichek testified she told Human Resources about the details of what she observed in the Boardroom. (Bezdichek Depo. at 182-191). John Youngdahl, an employee interviewed and who was present at the party, told Human Resources about inappropriate conduct, including a sexual comment about another employee's "crotch." (See Exhibit 4). Even Manager Salamone, who berated Plaintiff Smith for entering the Boardroom, told HR there was

12

"way too much inuendo's"(sic) between Manager Dale Nelson and employee Sarah Haviland. (Exhibit 5). Manager Heather Huggins corroborated some of what Plaintiff Smith observed that night. She stated she observed Manager Nelson touching a female band member. (Exhibit 6). He had his arms wrapped around the woman and she was pulling away from him. (Id.) It was an "awkward situation." (Id.). Tracie Schultz' notes reflect that Sarah Haviland was pouring shots into manager's mouths, straddling the person she was pouring the shots into, and that she flashed John Youngdahl (showed him that "the carpet matched the drapes"). (Exhibit 7). In spite of these revelations, no one was disciplined for sexual misconduct. Clearly, Defendant Hilton did NOT take prompt and appropriate action as it related to sexual harassment. As such, Defendant is not entitled to a defense on this basis. Plaintiff has demonstrated a prima face case of sexual harassment and set forth sufficient fact disputes, making summary judgment inappropriate.

## B. PLAINTIFF SMITH HAS SATISFIED THE ELEMENTS OF RETALIATION FOR HER COMPLAINTS OF SEXUAL HARASSMENT.

The MHRA prohibits reprisal against an employee who has filed a complaint about an unfair, discriminatory practice. Minn.Stat. § 363A.15 (2008); Bahr v. Capella Univ., 765 N.W.2d 428, 433 (Minn .App.2009) *review granted* (Minn. Aug. 11, 2009). Retaliation claims are analyzed using the legal framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this analysis, a plaintiff must first establish a prima facie case of reprisal discrimination. Smith v. Riceland Food, Inc., 151 F.3d 813, 818 (8th Cir. 1998). To do this, the plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. Id. Once the plaintiff has met this burden, the defendant must rebut the evidence by presenting its own evidence of a legitimate, non-retaliatory reason for the

actions it took against the plaintiff. Id. If the defendant can establish such a reason, the plaintiff can demonstrate intentional retaliation by proving that the reason given by defendant was mere pretext for discrimination. See Reeves v. Sanderson Plumbing Prod., Inc., 2000 WL 743663 (U.S. June 12, 2000).

A causal connection may be demonstrated indirectly by evidence of circumstances that justify an inference of retaliatory motive, including a showing that the adverse action follows closely in time to the protected activity. Hubbard v. UPI, Intl., Inc., 330 N.W.2d 428, 445 (Minn. 1983). Another case, Bassett v. City of Minneapolis, 211 F.3d 1097, 1106 (8th Cir. 2000), also holds that temporal proximity can demonstrate that causal link between the protected action and the adverse employment action. In Bassett, the Court found a temporal link between an EEOC charge and a negative evaluation sufficient to create an inference of retaliation. See Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1166 (8th Cir.1998)(time lapse of two months between protected activity and discharge may create inference of retaliatory motive); Keys v. Lutheran Family and Children's Servs. of Mo., 668 F.2d 356, 358 (8th Cir.1981)(less than two months between protected activity and adverse employment action). However, even where temporal proximity is lacking, some courts have found that "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can give rise to the inference." Porter v. Cal. Dep't of Corr., 383 F.3d 1018 (9th Cir. 2004).

Here, Plaintiff Smith has demonstrated a clear pattern of retaliation. After Smith came into the party on August 30, 2007, Manager Vennewitz told April Bezdichek he was going to get Smith fired. (Bezdichek Depo. at 201-202). Manager Salamone followed Smith out of the party and berated her for coming into the room. (Smith Depo. at 160-164). Plaintiff Smith was suspended during the course of a meeting where she reported the sexual misconduct she

14

observed in the Boardroom. (Schultz Depo. at 38; Exhibits 1 and 2). The reasons for the suspension are demonstrated pretext as no policy exists prohibiting managers from socializing with employees. Additionally, Defendant Hilton took advantage of a mere error on Plaintiff's FMLA paperwork and terminated her for not coming back to work on the date identified in the paperwork, despite the fact she was unable to walk on that date and was getting the stitches removed. Clearly, Plaintiff has set forth a prima facie case of retaliation, making summary judgment inappropriate.

## CONCLUSION

As a result of the foregoing, Plaintiff respectfully requests that this Court dismiss Defendant's Motion for Summary Judgment in its entirety.

Dated:___12/23/09_____                          **LORI PETERSON & ASSOCIATES**

s/Sheila Dokken_____
Lori Peterson, #212490
Sheila Dokken, #234874
*Attorneys for Plaintiff*
700 Lumber Exchange Building
10 South Fifth Street
Minneapolis, Minnesota 55402
(612)321-0606

# LORI PETERSON
### & A S S O C I A T E S

RECEIVED

09 DEC 23  PM 3: 48

CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

December 23, 2009

Thomas E. Marshall, Esq.                                          **HAND DELIVERED**
JACKSON LEWIS
225 South Sixth Street, Suite 3850
Minneapolis, Minnesota 55402

Re:  Harley Gayle v. Hilton Hotels Corporation, et al.
     Civil File No.:  08-6194 (MJD/JSM)
     Deborah Smith v. Hilton Hotels Corporation, et al.
     Civil File No.:  08-6195 (MJD/JSM)
     April Bezdichek v. Hilton Hotels Corporation, et al.
     Civil File No.:  08-6196 (MJD/JSM)

Dear Mr. Marshall:

Enclosed and served upon you, please find copies of the following documents for each of the above noted cases:

- Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment
- Affidavit of Sheila Dokken and Attachments
- Rule 7.1 Word Count Compliance Certificate
- Certificate of Service

These documents will also be ECF filed.

Very truly yours,

*Sheila Dokken/jlk*

Sheila Dokken
SD/jlk

Enclosures

700 LUMBER EXCHANGE · 10 SOUTH FIFTH STREET · MINNEAPOLIS, MINNESOTA 55402
612-321-0606 · FAX 612-321-0624